FILED by _____ MM ___ D.C.

Sep 27, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 22-20460-CR-ALTONAGA/DAMIAN

Case No. _____

16 U.S.C. § 3372(d)(2)
16 U.S.C. § 3373(d)(3)(A)(i)
18 U.S.C. § 371
18 U.S.C. § 554
18 U.S.C. § 2

UNITED STATES OF AMERICA

v.

KA YEUNG MARVIN CHAN,

_____ Defendant. /

## INFORMATION

The United States Attorney for the Southern District of Florida and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice (hereinafter collectively referred to as the "Government") charge that:

## GENERAL ALLEGATIONS

At all times material to this Information:

1.    The Lacey Act makes it unlawful for any person to make or submit any false record, account, or label for, or any false identification of any wildlife, including reptiles and any part, product, egg, or offspring thereof, which has been, or is intended to be . . . transported in interstate or foreign commerce. 16 U.S.C. § 3372(d)(2).

2.    The Lacey Act defines "wildlife" as "any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean,

arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring thereof." 16 U.S.C. § 3371(a).

3.      In order to protect certain species against over-exploitation, the United States became a signatory to an international treaty known as the Convention on International Trade in Endangered Species of Wild Fauna and Flora (hereinafter "CITES"). Appendix I of CITES includes species which are threatened with extinction and for which trade must be subject to particularly strict regulation and for which no trade is allowed for commercial purposes. CITES, Art. II at ¶ 1. Appendix II of CITES includes wildlife species that although not necessarily threatened with extinction now, may become so unless trade in specimens of such species is strictly regulated. CITES, Art. II at ¶ 2.

4.      The United States Fish and Wildlife Service ("USFWS"), Department of the Interior, is designated by Congress pursuant to the Endangered Species Act ("ESA"), Title 16, United States Code, Section 1537(a), as the CITES enforcement authority within the United States. The Department of the Interior publishes regulations to implement CITES in 50 C.F.R. Part 23. A list of all species protected by CITES and the ESA implementation program is maintained pursuant to the Convention by the CITES Secretariat. 50 C.F.R. §§ 23.7 and 23.9.

5.      The provisions of CITES are implemented through the ESA, which states in relevant part, "It is unlawful for any person . . . to engage in any trade in any specimens [of wildlife] contrary to the provisions of ... [CITES] or to possess any specimens [of wildlife] traded contrary to the provisions of ... [CITES]." "Trade" means, among other things, "export." CITES, Art. I at ¶ (c). "Specimen" means "any animal ... whether alive or dead." CITES, Art. I at ¶ (b).

6.      Ball pythons (*python regius*), boa constrictors (*boa constrictor imperator*), Sumatra short-tailed pythons (*python curtus*), common iguanas (*iguana iguana*), argentine tegus (*salvator*

*rufescens*), and common tegus (*salvator merianae*) are protected under Appendix II of CITES. Before exporting a specimen of any animal protected under Appendix II of CITES from the United States, a valid CITES export permit must be obtained. CITES, Art. IV at ¶ 2; 50 C.F.R. § 23.20(c). A separate original or a true copy of a CITES document must be issued before the export occurs and the document must accompany each shipment. 50 C.F.R. § 23.26(b).

7.      In order to streamline the *exportation* of captive bred reptiles, the USFWS created the CITES "Master File" permitting program. Master File permits allow reptile breeders to obtain multiple partially completed CITES export documents at one time, thus eliminating the need to individually apply for documentation for each single export. 50 C.F.R. §§ 13.11 and 23.51.

8.      A "Master File" permit issued by USFWS pursuant to CITES is valid during the period specified on the face of the permit, and by its terms, reptile breeders are not allowed to export CITES protected reptiles (snakes, turtles, geckos, etc.) captured in the wild. 50 C.F.R. §§ 13.21 and 23.54; *see also* USFWS Form 3-200-85.

9.      Reptile breeders must submit a CITES Form 3-201A (CITES Permit) to the USFWS with each reptile shipment they intend to export. By submission of this form, the reptile breeder certifies that all reptiles covered by the permit were bred and hatched from parental stock maintained at their facility. 50 C.F.R. § 23.26.

10.     All exports of wildlife must be accompanied by a USFWS Form 3-177, a Declaration for Importation or Exportation of Fish or Wildlife, listing among other things, the species and applicable CITES permit numbers. 50 C.F.R. § 14.63.

11.     In order to facilitate the commercial export process, many businesses employ the services of a customs broker. Customs brokers are regulated and empowered by U.S. Customs and Border Protection ("CBP") to assist importers and exporters in meeting U.S. government

requirements governing imports and exports. However, with respect to exporting wildlife, the exporter employing a Master File permit is responsible for ensuring that all invoices, export forms and CITES declarations are true and correct since the wildlife must originate from his parental stock, located at his facility.

12.     **KA YEUNG MARVIN CHAN ("CHAN")** was an international reptile dealer associated with a reptile business located in MongKok, Kowloon, Hong Kong.   Through his business, **CHAN** sold, among other reptiles, ball pythons (*python regius*), common iguanas (*iguana iguana*), argentine tegus (*salvator rufescens*), and common tegus (*salvator merianae*), all of which are CITES Appendix II species.

13.     Co-conspirator 1 (**CC-1**) was a resident of Miami, Florida, who owned and operated a business known as Dynasty Reptiles, located in Miami, Florida.   Through his business, CC-1 bred, stored, received, sold, and exported reptiles.

14.     **CC-1** currently holds a CITES Master File permit (Master File) which is valid until July 12, 2023.   CC-1 d/b/a Dynasty Reptiles has been a CITES Master File permit holder from 2008 to the present. Prior to issuance of the Master File permit, **CC-1** was required to submit to USFWS photographs of his facility, documentation as to where his parental stock came from, the estimated production capacity of specimens, the anticipated volume of export of specimens, and the normal mortality rates for specimens at the facility. Pursuant to his Master File permit, **CC-1** is allowed to breed certain reptiles from his certified parental stock (bred in captivity) for commercial sale and export.

15.     On or about July 13, 2020, **CC-1** renewed his Master File permit for specific captive bred species reared from his facility in Miami, Florida.   The renewal letter from USFWS authorized **CC-1** only to export bred-in-captivity specimens of ball python (*python regius*), boa

constrictor (*boa constrictor imperator*), Sumatra short-tailed python (*python curtus*), common iguana (*iguana iguana*), argentine tegu (*salvator rufescens)*, and common tegu (*salvator merianae*). The renewal letter declared that: (1) **CC-1** was the only one authorized to export under that Master File permit; (2) **CC-1** was authorized only to export bred-in-captivity specimens produced at **CC-1**'s business; and (3) **CC-1** was prohibited from allowing the permits issued under the Master File permit to be used by, given to, or shared with anyone else.

16.     Co-conspirator 2 (**CC-2**) was a resident of Yokohama, Japan, who owned and operated a business known as Maniac Reptiles.

### COUNT 1
**Conspiracy**
**( 18 U.S.C. § 371)**

1.     The General Allegations section of this Information is realleged and incorporated by reference herein, as though set forth in its entirety.

2.     Beginning in or around October 2013, the exact date being unknown, and continuing up to and including on or about August 27, 2021, in the Southern District of Florida and elsewhere, the defendant,

**KA YEUNG MARVIN CHAN,**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with other persons both known and unknown to the Government, including **CC-1** and **CC-2**, to commit certain offenses against the United States, that is:

      a.    to make and submit any false record, account, and label for, or any false identification of any wildlife, including reptiles and any part, product, egg, or offspring thereof, which has been, and is intended to be exported and . . . transported in interstate and foreign commerce, in violation of 16 U.S.C. § 3372(d)(2); and

b.      to fraudulently and knowingly export and send from the United States any merchandise, article, and object contrary to any law and regulation of the United States, in violation of Title 18, United States Code, Section 554.

### Object of the Conspiracy

3.      The purpose and objects of the conspiracy were for the defendant and his co-conspirators, known and unknown to the Government, to smuggle CITES Appendix II protected species and other wildlife out of the United States for financial gain.

### Manner and Means of the Conspiracy

The manner and means by which the conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **CC-1** agreed to allow **KA YEUNG MARVIN CHAN** and **CC-2** to use his CITES Master File permit to export reptiles in exchange for approximately $2,000 in U.S. currency for each export and/or for guaranteed purchases from his business.

5.      **KA YEUNG MARVIN CHAN** and **CC-2** traveled to the United States to attend reptile shows and to make purchases of reptiles for their reptile businesses.

6.      Prior to the anticipated export date, **KA YEUNG MARVIN CHAN** contacted **CC-1** and provided details regarding his purchase plans either in advance of arriving in the United States or while in the United States, to allow **CC-1** the necessary time to complete the fraudulent export paperwork.

7.      After purchasing the reptiles in the United States, **KA YEUNG MARVIN CHAN** and **CC-2** sent messages to **CC-1** listing their respective purchases during that particular trip. **CC-1** used that information to prepare fraudulent export forms declaring that all of the CITES II reptiles came from his captive-bred stock.

8.     On several occasions after purchasing reptiles in the United States, **KA YEUNG MARVIN CHAN** would arrange for the delivery of his reptile purchases to either to a FedEx hub from where **CC-1** would retrieve the reptiles, or to **CC-1**'s warehouse.  Upon receipt, **CC-1** would prepare the fraudulent export documents and then would deliver the reptiles and export documents to a customs broker who, in turn, submitted the fraudulent paperwork, including USFWS Form 3-177 and CITES Form 3-201A, to the USFWS.

9.     After purchasing reptiles in the United States for himself and/or **KA YEUNG MARVIN CHAN, CC-2** would either arrange for the reptiles to be shipped to the residence of an unindicted co-conspirator in the Miami area who would care for the reptiles until **CC-2** arrived, or **CC-2** would personally convey the reptiles to the Miami area.

10.     Upon arriving in the Miami area, **CC-2** transported the reptiles to the business location of Dynasty Reptiles, personally repackaged the reptiles, obtained the fraudulent export documents from **CC-1**, and then delivered the reptiles and export documents to a customs broker who, in turn, submitted the fraudulent paperwork, including a USFWS Form 3-177 and CITES Form 3-201A, to the USFWS.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects and purpose thereof, there were committed and caused to be committed by at least one of the co-conspirators herein, within the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.     On or about August 23, 2018, **KA YEUNG MARVIN CHAN** and **CC-1** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the

permit (to wit, approximately two ball pythons (*python regius*), twenty argentine tegus (*salvator rufescens*), and twenty common tegus (*salvator merianae*)) were bred and hatched from parental stock maintained at **CC-1**'s business.

2.      On or about September 10, 2019, **KA YEUNG MARVIN CHAN** and **CC-1** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, approximately two ball pythons (*python regius*) and eleven argentine tegus (*salvator rufescens*)) were bred and hatched from parental stock maintained at **CC-1**'s business.

3.      On or about October 29, 2020, **KA YEUNG MARVIN CHAN** and **CC-1** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, approximately five ball pythons (*python regius*), five argentine tegus (*salvator rufescens*), and ten common tegus (*salvator merianae*)) were bred and hatched from parental stock maintained at **CC-1**'s business.

4.      On or about July 12, 2021, **KA YEUNG MARVIN CHAN** and **CC-1** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, approximately nine common tegus (*salvator merianae*)) were bred and hatched from parental stock maintained at **CC-1**'s business.

5.      On or about August 10, 2021, **KA YEUNG MARVIN CHAN** and **CC-1** caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits

(3-201A) to be filed with USFWS and CBP, falsely certifying that the reptiles covered by the permit (to wit, approximately forty tegus, either argentine tegus (*salvator rufescens*) or common tegus (*salvator merianae*)) were bred and hatched from parental stock maintained at **CC-1**'s business.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

**Lacey Act - False Record**
**(16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(i))**

1.      The General Allegations section of this Information is re-alleged and incorporated by reference herein, as though set forth in its entirety.

2.      On or about August 10, 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**KA YEUNG MARVIN CHAN,**

did knowingly make and submit, and did cause to be made and submitted, a false record for and false identification of any wildlife, as specified below, in that the defendant caused a declaration for exportation of wildlife (USFWS Form 3-177) and accompanying CITES permits (3-201A) listing **CC-1**'s business as the exporter and a business located in  Mongkok, Kowloon, Hong Kong, as the foreign importer to be filed with USFWS and CBP, certifying that the reptiles covered by the permit (to wit, approximately forty tegus, either Argentine tegus (*salvator rufescens*) or common tegus (*salvator merianae*)) were bred and hatched from parental stock maintained at **CC-1**'s business, when in truth and in fact, as the defendant then knew, certain of said wildlife was not captive-bred at **CC-I**'s facility, said wildlife having been and intended to be both exported and

transported in interstate and foreign commerce, in violation of Title 16, United States Code,

Sections 3372(d)(2) and 3373(d)(3)(A)(i) and Title 18, United States Code, Section 2.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division

Thomas Watts-FitzGerald
Assistant United States Attorney

Banumathi Rangarajan
Senior Trial Attorney
Environmental Crimes Section

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

KA YEUNG MARVIN CHAN,

_____/
                Defendant.

**Court Division** (select one)
☑ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Cantonese

4. This case will take 0 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I    ☑ 0 to  5 days
   II   ☐ 6 to 10 days
   III  ☐ 11 to 20 days
   IV   ☐ 21 to 60 days
   V    ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) Yes
   If yes, Magistrate Case No. 22-mj-02754-AOR
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Bloom      Case No. 22-20025-CR-BB
9. Defendant(s) in federal custody as of 8/19/2022
10. Defendant(s) in state custody as of _____
11. Rule 20 from the            District of
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
Thomas Watts-FitzGerald
Assistant United States Attorney
FLA Bar No.      0273538

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   Ka Yeung Marvin Chan

**Case No:** _____

Count(s) #: 1

Conspiracy to Smuggle Wildlife

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

Count(s) #: 2

Making False Records

Title 16, United States Code, Section 3372(d)(2) ; 3373(d)(3)(A)(i)
* **Max. Term of Imprisonment: 5 Years Imprisonment**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 Years**
* **Max. Fine: Greater of $250,000 or twice the pecuniary gain/loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**